UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARSHALL DWAYNE HUGHES,

           Plaintiff,           Civil Action No. 22-10663

v.                                Denise Page Hood
                                United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,             David R. Grand
                                United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 18)**

Plaintiff Marshall Dwayne Hughes ("Hughes") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 16, 18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.    **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Hughes is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **GRANTED**, Hughes' Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Hughes was 51 years old at the time of his application date of September 12, 2019, and at 6'1" tall weighed approximately 235 pounds. (PageID.76, 80, 99, 265, 269).[1] He earned a GED but had no further education. (PageID.270). He was incarcerated from approximately 1995 to 2008. (PageID.258, 284). Then, he worked briefly as a barber, at a laundromat, and at a nursing home; however, he has not worked since December 2010, allegedly because of his medical conditions. (PageID.87-88, 269-70). He now alleges disability primarily as a result of a torn left quadriceps tendon, back pain, anxiety, and panic attacks. (PageID.80, 99, 114, 269).

After Hughes' application for SSI was denied at the initial level on February 5, 2020 (PageID.131-34) and on reconsideration on June 11, 2020 (PageID.150-52), he timely requested an administrative hearing, which was held on February 17, 2021, before ALJ Donald D'Amato (PageID.73-97). Hughes, who was represented by attorney Claire Zelmanski, testified at the hearing, as did vocational expert ("VE") Mary Everts. (*Id.*). On March 18, 2021, the ALJ issued a written decision finding that Hughes is not disabled under the Act. (PageID.56-68). On January 27, 2022, the Appeals Council denied review. (PageID.44-48). Hughes timely filed for judicial review of the final decision on March 18, 2022. (ECF No. 1).

---

[1] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 12.

The Court has thoroughly reviewed the transcript in this matter, including Hughes' medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Hughes is not disabled under the Act. At Step One, the ALJ found that Hughes has not engaged in substantial gainful activity since September 12, 2019 (the application date). (PageID.58). At Step Two, the ALJ found that he has the severe impairments of degenerative disc disease of the lumbar and cervical spine, chronic obstructive pulmonary disease, history of a left quadriceps tendon tear, panic disorder with agoraphobia, and obesity. (*Id.*). At Step Three, the ALJ found that Hughes' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.59).

The ALJ then assessed Hughes' residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: requires an entry level job involving simple, routine tasks that can be learned on the job within 30 days or less; cannot function as a member of a discrete team, but can work in proximity to coworkers and supervisors with contact largely superficial; should have no

4

direct interactive contact with the public; requires a low stress environment, defined as one having only occasional changes in the work setting; can lift and/or carry 10 pounds frequently and up to 20 pounds occasionally (from very little up to 1/3 of an 8-hour workday); can stand and/or walk (with normal breaks) for 4 hours in an 8-hour workday, but can do so for only 30 minutes at a time before needing to sit for 2 minutes before resuming standing and/or walking while remaining on task; can sit (with normal breaks) for 6 hours in an 8-hour workday, but can do so for only 1 hour at a time before needing to stand and/or walk for 2 minutes before resuming sitting while remaining on task; must avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors; must be restricted to a work environment with good ventilation that allows him to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity; must be restricted to a work environment that allows him to avoid frequent concentrated exposure to pulmonary irritants such as fumes, dust, gases, and smoke; and can occasionally climb stairs with handrails, balance, stoop, crouch, kneel, and crawl, but must avoid climbing ladders, scaffolds, and ropes. (PageID.61).

At Step Four, the ALJ found that Hughes is unable to perform any of his past relevant work. (PageID.66). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Hughes is capable of performing the jobs of assembler (60,000 jobs nationally), machine tender (10,000 jobs), and inspector/packer (4,000 jobs). (PageID.67). As a result, the ALJ concluded that Hughes is not disabled under the Act. (PageID.68).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

   *1.     Substantial Evidence Supports the ALJ's RFC Finding*

As set forth above, the ALJ found that Hughes has the RFC to perform a reduced range of light work.[2] (PageID.61). In reaching this conclusion, the ALJ supportably found that conservative "treatment was generally successful in managing [his] symptoms[.]" (PageID.64). Both Hughes' own hearing testimony and the medical evidence support this conclusion. (*E.g.*, PageID.82-83 (Hughes' testimony that taking prescribed medication eases his pain), 381 (physical therapy after tear of left quadriceps tendon allowed Hughes to walk without cane)). This was a relevant consideration. *See, e.g., Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment); *McKenzie v. Comm'r, Soc. Sec. Admin.*, No. 99-3400, 2000 WL

---

[2] Because Hughes challenges only the ALJ's evaluation of his physical impairments, the Court will not discuss in detail evidence related to his mental impairments.

7

687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.").

The ALJ also correctly noted that the record contains "generally unremarkable physical examination findings, including good motor strength and normal gait on examinations, despite [Hughes'] reports of back, neck, and knee pain …." (PageID.64; *see also* PageID.359-60, 368, 371, 376, 382-83). These considerations too were appropriate. *See, e.g., Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir. 2018) (concluding that treatment notes showing normal muscle tone and strength constituted substantial evidence that the plaintiff could perform the standing and walking requirements of light work); *Latham v. Comm'r of Soc. Sec.*, No. 16-10690, 2016 WL 11260314, at *5 (E.D. Mich. Dec. 27, 2016) (affirming RFC for light work where, despite alleged knee and back pain, the plaintiff exhibited full range of motion and a normal gait).

Additionally, the ALJ's physical RFC finding is supported by the assessments of state agency physicians Robin Mika, D.O. and Francis Grubelich, M.D., as well as consultative examiner Bina Shaw, M.D. Specifically, Drs. Mika and Grubelich both found that Hughes can lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour day; and frequently balance, stoop, kneel, crouch, crawl, and climb ladders, ropes, scaffolds, ramps, and stairs. (PageID.106-07, 121-22). Similarly, Dr. Shaw found that Hughes can "remain active"; sit for at least 1-2 hours; stand at least 1 hour; and push and pull at least 20 pounds. (PageID.360). Dr. Shaw also found that Hughes requires a cane for "long distance

8

walking," i.e., more than 2-3 blocks.[3] (PageID.362). The ALJ properly found these opinions persuasive to the extent they were supported by and consistent with the evidence. (PageID.65-66). This too was appropriate. *See* 20 C.F.R. § 416.920c(b)(2) (providing that supportability and consistency are the "most important" factors in evaluating the persuasiveness of an opinion). Thus, substantial evidence supports the ALJ's RFC finding.

### 2.  *Hughes' Arguments are Without Merit*

Before this Court, Hughes argues that the ALJ improperly failed to consider the "substantive cause" of his symptoms, i.e., "a torn quadriceps muscle" rather than "back ailments." (ECF No. 16, PageID.452). As the Commissioner points out, however, "symptoms – not diagnoses or the substantive cause of limitations – are the relevant inquiry." (ECF No. 18, PageID.472 (citing *Flowers v. Comm'r of Soc. Sec.*, No. 14-12449, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) (indicating diagnoses do not speak to RFC)). Moreover, the ALJ properly found that Hughes' "history of a left quadriceps tendon tear (2010)" was a severe impairment. (PageID.58). And, the ALJ referenced that impairment several times throughout his RFC analysis (PageID.62-64), eventually explaining:

> While the claimant has a history of a left quadriceps tendon tear in the

---

[3] The ALJ did not find that Hughes requires a cane, noting Hughes' own reports that he "had a history of a left leg quadriceps tendon tear, and that he used to walk with a cane, but following physical therapy he stopped using the cane." (PageID.62; *see also* PageID.381). Moreover, during Dr. Shaw's consultative examination, Hughes reported difficulties with prolonged walking but said that he nevertheless could "walk without a limp without using [a] cane." (PageID.358). The ALJ also noted Dr. Shaw's observation that Hughes left the examination "without use of a cane" and without a limping gait. (PageID.62, 360). Hughes does not challenge the ALJ's findings in this respect, and, regardless, "use of a cane does not preclude light work." *Marko v. Comm'r of Soc. Sec.*, No. 16-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (citing cases).

9

remote past (2010) and he has noted walking with a cane for prolonged ambulation, and has been provided a knee brace, the evidence of record does not demonstrate that the claimant has had ongoing problems or limitations arising from his remote quadriceps tendon tear to the extent alleged based on the objective evidence from the adjudicative period and claimant's own reported activities of daily living. The claimant reported in December 2019 that he used a cane for ambulation but following physical therapy for his knee, he stopped using the cane.

(PageID.63 (internal citations omitted)). Additionally, as discussed above, the ALJ reasonably relied on the findings of Drs. Mika, Grubelich, and Shaw, all of whom clearly considered Hughes' history of a torn quadriceps tendon but found that it did not produce disabling limitations.[4] (PageID.65-66, 99-107, 114-22, 358-60). The ALJ also noted

---

[4] Hughes also asserts that the state agency determinations erroneously labeled his torn quadriceps as "secondary," while characterizing his back impairment as "primary." (ECF No. 16, PageID.452 (citing PageID.103)). He characterizes this as being "akin to the tail that wags the dog." (*Id.*). Hughes also complains that the state agency determination referenced only a "partially torn" quadriceps, rather than a "complete" tear. (*Id.*, PageID.453; ECF No. 19, PageID.481). These arguments lack merit. As an initial matter, it is the ALJ's decision – not the state agency determination – that guides the Court's analysis, as that was the Commissioner's final decision for purposes of judicial review. The ALJ repeatedly referred to a "quadriceps tendon tear" (not a "partially" torn one), and found that impairment to be severe. The state agency physicians, too, found Hughes' quadriceps issue to be a severe impairment and supportably accounted for it in assessing the RFC. (PageID.102-111). Hughes fails to identify any specific impact of the state agency physicians attaching the "secondary" label to *his* torn quadriceps. At most, he asserts that individuals with torn quadriceps "may" suffer "radiculopathy, lower back and leg pain ..." and that the agency doctors' use of the "secondary" label "constitutes a fundamental and structural defect in the Social Security Administration mechanism itself." (ECF No. 16, PageID.453, 456). Hughes' first assertion says nothing about the specific symptoms or, more importantly, limitations, *he* suffers from, *see, supra* at 9; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... of course, says nothing about the severity of the condition."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."), and his second assertion is misplaced, as the ALJ, for the reasons discussed herein, adhered to the Administration's prescribed process for determining disability claims. In short, whether Hughes' quadriceps tear was "primary" or "secondary," "complete" or "partial," the ultimate issue is whether that impairment caused him to suffer disabling limitations, and, again, for the reasons discussed above, the ALJ properly found it did not.

Hughes' daily activities, which were inconsistent with disabling limitations caused by a torn quadriceps, such as performing housework, watching his young child, and "constantly" going up and down the stairs throughout the day. (PageID.64, 82). Thus, Hughes' argument that the ALJ improperly characterized his quadriceps tendon tear is unavailing.

Finally, Hughes argues that the failure to consider a 2011 MRI of his quadriceps constitutes error warranting remand. (ECF No. 16, PageID.453). The Court disagrees. The relevant period for SSI claims begins on the date the application was filed. *See* 20 C.F.R. § 416.335. Here, Hughes filed his claim on September 12, 2019 (PageID.98), so there was no need for the ALJ to consider an MRI dated eight years prior. And, even if there was some requirement that this MRI be considered, diagnostic x-rays say "nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). *See also Flowers*, 2015 WL 4274961, at *4 (declining to remand because "the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein"). Thus, Hughes' reliance on the 2011 MRI does not advance his cause.[5]

For all of the above reasons, and upon an independent review of the entire record,

---

[5] In his reply brief, Hughes asserts that if this 2011 MRI was deemed "moot," then an "independent" MRI should have been performed. (ECF No. 19, PageID.485). But, Hughes cites no case law or regulation in support of this proposition, and the Court is aware of none. Moreover, here, where Hughes was represented by counsel and no indication was given that additional medical evidence or testing was needed, the ALJ was entitled to rely on counsel to present Hughes' case and develop his claims. *See Davis v. Comm'r of Soc. Sec. Admin.*, No. 18-10228, 2019 WL 2051899, at *8 (E.D. Mich. Feb. 19, 2019) (citing cases).

11

the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **GRANTED**, Hughes' Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: October 17, 2022  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 17, 2022.

s/Michael E.  Lang  
MICHAEL E. LANG  
Case Manager
